IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____
                                    )
KIMBERLY and BRYANT CAMPBELL,       )
                                    )
        Plaintiffs,                 )
                                    )   CASE NO.
v.                                  )
                                    )   _____
DIAMONDS INTERNATIONAL, LLC,        )
                                    )   **JURY TRIAL DEMANDED**
        Defendant.                  )
_____)

## COMPLAINT

COME NOW Plaintiffs Kimberly and Bryant Campbell, by and through counsel, and hereby file this Complaint against Diamonds International, LLC alleging as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs are adult citizens of the State of Georgia and reside in Rockdale County.

2. Upon information and belief, Diamonds International LLC is a New York limited liability company doing business at several locations throughout the United States and the Caribbean.

3. This Court has personal jurisdiction over Defendant by virtue of the fact that Defendant actively markets its merchandise to Georgia customers online through its website, contracts to supply services or goods in this state, extends credit to customers in this state, and causes tortious and other injuries within this state.

4. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000 inclusive of treble damages, punitive damages, and attorneys' fees and costs.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 under the facts alleged herein.

## STATEMENT OF FACTS

6. In December 2016, Mr. and Mrs. Campbell went on a cruise in the Caribbean with Norwegian Cruise Line.

7. After attending several shopping seminars on the ship, Mr. and Mrs. Campbell spoke with the ship's shopping specialist and the ship's gemologist regarding the possibility of upgrading Mrs. Campbell's wedding ring for their 25th Anniversary.

8. Mrs. Campbell told the ship's shopping specialist that she would be interested in a ring featuring a sapphire as its main stone.

9. Both the ship's shopping specialist and the ship's gemologist recommended that Mrs. Campbell look at tanzanite as an alternative to sapphire because of tanzanite's value and investment quality.

10. The presentations on the ship – particularly the VIP presentation – praised the quality and value of tanzanite, which was described as a rare stone with limited supply, previously only sold by Tiffany & Co.

11. The Campbells were then given a VIP pass to attend a special shopping event at Diamonds International in Cozumel.

12. On December 22, 2016, the Campbells were escorted to Diamonds International's location in Cozumel by the ship's shopping specialists.

13. After the Campbells were discouraged by the poor customer service provided at Diamonds International, the ship's shopping specialist suggested the Tanzanite International location nearby and personally walked the Campbells to the boutique.

14. As demonstrated herein, Tanzanite International is an affiliated entity of Diamonds International that carries slightly different merchandize.

15. The ship's shopping specialist introduced the Campbells to the manager and alleged tanzanite expert at Tanzanite International, and explained that the couple desired to upgrade Mrs. Campbell's wedding ring.

16. The Tanzanite International manager showed the Campbells several rings and after Mrs. Campbell found one that she liked, the manager produced a matching tanzanite bracelet to pair with the wedding ring.

17. The Campbells told the manager that they did not wish to purchase a bracelet.

18. The manager persisted, insisting that the bracelet was quite valuable and a great bargain. The Campbells continued to decline the offer.

19. In response and to further entice the Campbells, the Tanzanite International manager produced an EGL gem report stating that the bracelet was worth over $20,000. The manager said that the Campbells could get an excellent deal on the ring and bracelet pair because Tanzanite International was having a special Christmas sale.

20. The ship's gemologist entered the store and Mrs. Campbell asked the gemologist to give her expert opinion of the bracelet's value.

21. The gemologist assured the Campbells that they were getting an incredible deal, explaining that the bracelet was worth more than the EGL gem

report stated because the appraisal was conducted in December 2015 and tanzanite's value had since increased.

22.  Relying on the Tanzanite International manager's statements of value, the EGL gem report provided by the Tanzanite International manager, and the expert opinion of the ship's gemologist, the Campbells purchased the tanzanite ring and matching bracelet for $15,000.

23.  In order to complete the purchase, the Campbells had to open two Diamonds International credit cards to finance the $15,000 purchase.

24.  During the purchase, the Campbells inquired as to Defendant's return policy and were assured that they had 30 days to return their items if they were dissatisfied with the product.

25.  The Tanzanite International salespeople told the Campbells that returns could be conducted through the Diamonds International headquarters located in New York once the Campbells returned home.

26.  The Campbells were also told by the ship's shopping specialist they could return their items via Diamonds International's headquarters in New York upon returning home.

27.  Additionally, the Campbells were led to believe that their purchase of the jewelry would be tax and duty free.

28. However, the Campbells were forced to pay $549.50 in duty fees for the tanzanite ring and bracelet when they returned to the United States.

29. Upon returning home, the Campbells had the ring and bracelet appraised. They presented the Tanzanite International EGL gem report stating the bracelet was worth $20,000 to a gemologist.

30. The gemologist stated that the EGL appraisal was "trash" and that the bracelet was worth less than half of the $20,000 value quoted in the EGL.

31. The gemologist further cautioned that the ring and bracelet were best suited for occasional wear because tanzanite is a sensitive stone and, if scratched or nicked, the stone would need to be sanded down, thereby shrinking the stone over time.

32. Neither the ship's gemologist nor the Tanzanite International manager and tanzanite expert ever mentioned that tanzanite would not be suitable for daily wear.

33. After receiving the actual assessment of the jewelry's value, the Campbells decided to return the ring and the bracelet to Diamonds International, since the 30-day return period had not yet expired.

34. On January 6 and 7, Mrs. Campbell called Defendant's customer service number in New York, but was unable to reach anyone.

35. Mrs. Campbell was finally able to reach a customer service representative via telephone on January 9, 2017.

36. Defendant's customer service representative told Mrs. Campbell to open a "customer service claim" and that someone would call her back within 24 to 48 hours.

37. Mrs. Campbell opened a "customer service claim," but Defendant did not contact her until January 12, 2017.

38. On January 12, 2017, Defendant's customer service representative told Mrs. Campbell that she needed to email the representative all the sales documentation and that the representative would call Mrs. Campbell once the documents were reviewed.

39. Mrs. Campbell submitted all of the requested documentation requested by the customer service representative.

40. On January 18, 2017, Defendant's customer service representative told Mrs. Campbell that Defendant does not give refunds but that she could receive store credit for $15,000.

41. Mrs. Campbell told the representative that she did not want store credit, but wanted to return the jewelry for a full refund like she had been promised she would be able to do.

42. Defendant has refused to agree to give the Campbells a full refund for the return of the jewelry or to reimburse the tax which was required to be aid despite Defendant's promise to the contrary.

## REQUESTS FOR RELIEF

## COUNT ONE

## FRAUD

43. Plaintiffs incorporate by reference Paragraphs 1 through 42 above as if set forth verbatim herein.

44. Defendant conducted a fraudulent scheme to induce the Campbells to purchase its jewelry.  Defendant willfully and knowingly made, or caused to be made, affirmative misrepresentations of material facts in the furtherance of this scheme, including that a tanzanite bracelet was worth $20,000 and that the purchase of its jewelry would be duty-free.  Defendant also willfully and knowingly concealed material facts from the Campbells, such as that tanzanite is a soft stone and therefore not suitable for everyday wear.

45. As a result of these false and misleading statements and representations, the Campbells purchased a wedding ring upgrade that cannot be worn every day and a bracelet that is worth less than half of the bargained-for

$20,000. Additionally, the Campbells were forced to pay $549.50 in taxes on the jewelry because it was not duty-free.

46. Defendant knew of the falsity of its misrepresentations at the time they were made, as well as the material nature of the facts that Defendant willfully concealed from the Campbells. Defendant knew that the EGL gem report, claiming the bracelet was worth $20,000, was false; that the jewelry would not be duty-free; and that tanzanite is a soft stone and therefore would not be suitable for Mrs. Campbell's desire to upgrade her wedding ring. Since Defendant had superior knowledge not available to the Campbells, Defendant had the duty to disclose such facts before the Campbells purchased Defendant's jewelry.

47. The Campbells relied on Defendant's representations and were unaware of their falsity or misleading nature. The Campbells' reliance was reasonable under the circumstances, as Defendant's store manager held herself out as a tanzanite expert and produced an EGL gem report to verify her claim that the bracelet was valuable and worth $20,000. As a result of their reliance, the Campbells purchased a bracelet that was not worth $20,000 and a wedding ring that Mrs. Campbell cannot wear every day, and were forced to pay $549.50 in duty fees.

48. Defendant has therefore committed a fraud upon the Campbells, and as such, is liable to the Campbells for treble compensatory damages, punitive damages in such amount as may be proven at trial, together with attorneys' fees and expenses and such other amounts as may be appropriate.

## COUNT TWO

## FRAUD IN THE INDUCEMENT

49. Plaintiffs incorporate by reference Paragraphs 1 through 42 above as if set forth verbatim herein.

50. When the Campbells entered Defendant's Tanzanite International store, they were only looking for a potential upgrade for Mrs. Campbell's wedding ring. They were not interested in a bracelet.

51. To induce the Campbells to spend more money, Defendant's Tanzanite International store manager produced an EGL gem report that claimed that the bracelet the manager was trying to sell to the Campbells was worth $20,000.

52. The Campbells purchased the bracelet because Defendant's store manager promised them it was worth $20,000. The Campbells' reliance on Defendant's manager's appraisal of the bracelet was reasonable because the

manager held herself out as a tanzanite expert and produced an EGL gem report to confirm her valuation.

53. The bracelet was not worth $20,000.

54. Defendant has not delivered a bracelet worth $20,000 to the Campbells as promised.

55. Moreover, when Defendant's manager induced the Campbells to purchase the bracelet, Defendant knew that the EGL gem report was false and that the bracelet was not worth $20,000.

56. Therefore, Defendant had no intention of delivering a $20,000 bracelet to the Campbells when the promise was made.

57. Because Defendant fraudulently induced the Campbells into purchasing the ring and bracelet as a set, the Campbells are entitled to rescind this contract, be reimbursed all expenses incurred resulting from the fraudulent inducement, and receive their attorneys' fees and expenses, punitive damages, and such other amounts as may be appropriate.

## COUNT THREE
## NEGLIGENT MISREPRESENTATION

58. Plaintiffs incorporate by reference Paragraphs 1 through 42 above as if set forth verbatim herein.

59. Defendant conducted a fraudulent scheme to induce the Campbells to purchase Defendant's jewelry. Defendant made, or caused to be made, affirmative misrepresentations of material facts in furtherance of its scheme, including that a tanzanite bracelet was worth $20,000 and that the purchase of its jewelry would be duty-free. Defendant also concealed material facts from the Campbells, such as that tanzanite is a soft stone and therefore not suitable for everyday wear.

60. Defendant knew of the falsity of its misrepresentations as well as the material nature of the facts that Defendant concealed from the Campbells. Defendant, as a dealer in gemstones and jewelry, had superior knowledge not available to the Campbells, and as such, had a duty to disclose the facts.

61. The Campbells, as customers of Defendant, were foreseeable persons.

62. The Campbells relied upon Defendant's representations and were unaware of their falsity or misleading nature. The Campbells' reliance was reasonable under the circumstances, since Defendant's store manager held herself out as a tanzanite expert and produced the false EGL gem report to underscore her claims of value.

63. Due to the Campbells' reasonable reliance on Defendant's misrepresentations, the Campbells spent $15,000 on a wedding ring that Mrs.

Campbell cannot wear daily and a bracelet that was promised to be worth $20,000 but whose actual value was less than half that amount.

64.   Defendant has therefore committed the tort of negligent misrepresentation, and as such, is liable to pay the Campbells' damages for all losses, including those described above, in such amount as may be proven at trial, together with attorneys' fees and such other amounts as may be appropriate.

## COUNT FOUR

## BREACH OF CONTRACT

65.   Plaintiffs incorporate by reference Paragraphs 1 through 42 above as if set forth verbatim herein.

66.   Defendant's representations and promises created a contract whereby Plaintiffs had 30 days to return their items if they were dissatisfied with the product.

67.   Defendant has breached that contract by refusing to allow Plaintiffs to return the product that they purchased for a full refund.

68.   Defendant's representations and promises created a contract whereby Plaintiffs' purchase was tax and duty free.

69.   Defendant breached this contract and Plaintiffs were forced to pay taxes on their purchase.

70. As a result of Defendant's breaches, the Campbells have been injured in an amount to be proven at trial.

## COUNT FIVE

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

71. Plaintiff incorporates by reference Paragraphs 1 through 42 above as if set forth verbatim herein.

72. Plaintiffs further incorporate by reference Paragraphs 66 through 70 above as if set forth verbatim herein.

73. Contract law imposes upon each party to a contract the duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and performing in a fraudulent or illegal fashion constitute examples of bad faith in the performance of contracts.

74. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require

more than honesty. Examples of violations of good faith and fair dealing are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and participation in illegal conduct.

75. Defendant has breached the covenant of good faith and fair dealing with the Campbells through the practices as alleged herein.

76. The Campbells paid Defendant $15,000 in exchange for a tanzanite ring and a tanzanite bracelet allegedly worth $20,000, and thus have performed all of the obligations imposed on them under their contract with Defendant.

77. Defendant swindled the Campbells by promising them a tanzanite bracelet worth $20,000 and providing them with a tanzanite bracelet worth less than half that value.

78. The Campbells sustained damages as a result of Defendant's breach of the contract as modified by the covenant of good faith and fair dealing.

79. Defendant's breach of the contract via its lack of good faith and fair dealing caused the Campbells damage and they are entitled to be made whole.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

1. Find for Plaintiffs as to each count of this Complaint;

2. Award Plaintiffs actual, incidental, and consequential damages in an amount to be proven at trial, including any and all compensatory damages, punitive damages, restitution, and any applicable penalties and interest;

3. Order Defendant to issue a credit back to Plaintiffs' two Diamonds International credit cards and to refund any payments made by Plaintiffs upon receipt of the returned jewelry;

4. Enjoin Defendant from utilizing deceptive trade practices, such as generating and/or using false EGL gem reports and promises of inflated value to induce customers to purchase Defendant's jewelry;

5. Award all reasonable costs incurred by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

6. Grant a trial by jury; and

7. Award such other relief as this Court deems just and proper.

DATED this 24th day of March, 2017.

                Respectfully submitted,

        BY:   WEBB, KLASE & LEMOND, LLC

               */s/ G. Franklin Lemond, Jr.*
               E. Adam Webb
                Georgia State Bar No. 743910
               G. Franklin Lemond, Jr.
                Georgia State Bar No. 141315
               1900 The Exchange, S.E.
               Suite 480
               Atlanta, Georgia 30339
               (770) 444-9325
               (770) 217-9950 (facsimile)
               Adam@WebbLLC.com
               Franklin@WebbLLC.com